# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| v. | § | CRIMINAL ACTION H-17-385 |
| | § | |
| GWENDOLYN BERRY | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are Gwendolyn Berry and Michael Berry's motions to quash the writs of garnishment against Michael Berry's two retirement accounts. Dkts. 116, 108, 125, 129. Having considered the motions, responses, replies, and the applicable law, the court is of the opinion that the motions to quash the writ of garnishment should be DENIED.

## I. BACKGROUND

Michael Berry is defendant Gwendolyn Berry's spouse. Mrs. Berry is currently serving fifty-one months imprisonment for wire fraud, mail fraud, and making and subscribing a false tax return. Dkt. 98. Mrs. Berry is required to pay $2,165,126.40 in restitution. *Id.* On September 24, 2018, the government filed an application for writ of garnishment against five separate investment accounts held by Vanguard, the plan administrator. Dkt. 85. After a hearing was held on October 16, 2018, on the government's motion for writ of garnishment, the government re-filed its application for writ of garnishment. *See* Dkt. 93. In its re-filed application, the government specified that it sought to garnish one hundred percent of the value of Mrs. Berry's accounts and fifty percent of the value of Mr. Berry's investment accounts ending in #1212 and #0513. Dkt. 104.

The government seeks to garnish fifty percent of Mr. Berry's retirement accounts based on Fifth Circuit case law that allows restitution liens to attach to the non-debtor's solely managed community property. Dkt. 104. Both Mr. and Mrs. Berry have objected to and moved to quash the writs of garnishment against Mr. Berry's two retirement accounts. Dkts. 116, 108, 124, 125, 126,

127, 129.[1] The Berrys contend that the writ of garnishment is improper because: (1) federal law preempts the characterization of the retirement accounts; (2) even if state law applied, Mrs. Berry waived any interest she had in the retirement accounts; (3) the writ overstates the amount of restitution presently due; and (4) Section 303 of the Consumer Credit Protection Act limits garnishment to twenty five percent of the account totals. *Id.* In the alternative, the Berrys request the court modify the writ of garnishment to alleviate financial strain on Mr. Berry. *Id.*

## II. ANALYSIS

### A. Federal pre-emption argument

First, the Berrys rely on *Boggs v. Boggs*, 520 U.S. 833 (1997), for the proposition that retirement funds are not community property because state community property law is pre-empted by federal law. Dkts. 125 at 8, 108 at 2, 124 at 1. The disputed accounts are comprised of funds that were once regulated by ERISA and are now regulated by Section 408 of the Tax Code. Dkt. 125 at 11. The Berrys argue that "[l]ike ERISA as construed in *Boggs*, the federal law which is § 408 renders state efforts to categorize retirement funds as separate, community or anything else meaningless." Dkt. 125 at 11–12. While the preemption and alienation provisions of ERISA do not apply, "the alienation and preemption provisions of Section 408 do." Dkt. 125 at 11. The United States responds that the accounts are rollover IRA accounts that are not entitled to ERISA protection and that *Boggs* is inapplicable because that decision is largely based on ERISA's anti-alienation provision. Dkt. 117 at 6.[2]

---

[1]Because Mr. and Mrs. Berry adopt and incorporate each other's objections and arguments, the court will treat all objections, even if previously characterized as individual or joint, as joint arguments. Dkt. 129 at 5.

[2]ERISA's anti-alienation clause generally prohibits any assignment of retirement benefits. 29 U.S.C. § 1056(d)(1); *see Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 376, 110 S.Ct. 680, 107 L.Ed. 2d 782 (1990).

The court finds that the accounts are no longer governed by ERISA, therefore ERISA does not pre-empt state community property laws. *See Johns v. Rozet*, 826 F. Supp. 565, 567 ("... funds rolled over from an employee benefit plan into an IRA are not covered by ERISA."). The Berrys rely on *Boggs* to argue that § 408, like ERISA, pre-empts state law characterization. Dkt. 125 at 8. However, *Boggs* is distinguishable because the *Boggs* decision rests on inapplicable ERISA provisions.[3]

ERISA does not govern IRAs. *See* C. Scott Pryor, Rock, Scissors, Paper: ERISA, the Bankruptcy Code and State Exemption Laws for Individual Retirement Accounts, 77 Am. Bankr. L.J. 65, 73 (2003). There is no federal case, involving an IRA rollover, that holds that some federal law, other than ERISA, preempts state community property law. The court is persuaded by a private letter ruling from the Internal Revenue Service ("IRS") addressing the devisability of a nonparticipant spouse's interest in the IRA rollover upon his or her death. I.R.S. P.L.R. 199937055 (Sept. 17, 1999). In Private Letter Ruling 1999-37-055, the IRS ruled that § 408(g), which provides that § 408 is to be applied without regard to any community property laws, "does not abrogate any substantive rights under State law." *Id.* The IRS explained that § 408(g) only applies to sections 219 and 220, as such, the classification of an IRA rollover as community property was a matter of state

---

[3]In *Boggs*, the Supreme Court found that there was a direct conflict between state law and ERISA and did not need to inquire into whether the statutory phrase "relate to" in ERISA's pre-emption clause provided further support for the pre-emption claim. 520 U.S. at 1760–61. Specifically, the Court said,
> "ERISA's express pre-emption clause states that the Act 'shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . .' § 1144(a). We can begin, and in this case end, the analysis by simply asking if state law conflicts with the provisions of ERISA or operates to frustrate its objects. We hold that there is a conflict, which suffices to resolve the case. We need not inquire whether the statutory phrase "relate to" provides further and additional support for the pre-emption claim."

*Id.*

law. *Id.* Accordingly, § 408(g) cannot be held to mean that Sec. 408 preempts state community property law. *Id.*

Similarly, the Berrys' argument that § 408(a)(4)'s anti-alienation requirement preempts state community property law fails. § 408(a)(4) provides that the "interest of an individual in the balance in his account is nonforfeitable." 26 U.S.C.A. § 408 (West). While ERISA's anti-alienation provision generally prohibits the assignment of retirement benefits except for two statutory exceptions, § 408(a) is not as narrow. *See Boggs*, 520 U.S. at 850. Under § 408(a), the beneficiary of an account may assign the account to a third person and may withdraw money from the account at any time. *In re Dunn*, 5 B.R. 156, 158 (Bankr. N.D. Tex. 1980). As such, the ERISA provisions are not analogous to § 408's provisions. Because § 408's preemption and alienation provisions cannot be read to mean that they preempt state community property laws, the Berrys' federal preemption argument fails.

**B.     State law argument**

Second, the Berrys argue that the Vanguard accounts are governed by Pennsylvania law because the custodial agreement has a provision that states that the funds held "shall be governed by and construed, administered and enforced according to the law of the Commonwealth of Pennsylvania . . ." Dkt. 129 at 2. According to the Berrys, under Pennsylvania law, Gwendolyn Berry waived her rights to the funds in the Vanguard accounts which removes that property from the marital estate. *Id.* But even if Texas law applies, the Berrys argue, Texas has a similar statute that yields the same result. *Id.* at 4. The government argues that Mrs. Berry did not sign a waiver to her community property interest in the retirement accounts.[4]

---

[4]The government did not respond to the Berrys' argument that Pennsylvania law changes the analysis. The court will assume the government believes Texas law applies based on previous arguments.

4

As a threshold matter, the court determines that Texas law applies. The Berrys cite no authority for the proposition that Pennsylvania law applies. The Berrys were domiciled in Texas. Accordingly, the characterization of the retirement accounts is governed by Texas community property law. *See* I.R.S. P.L.R. 8040101 (July 15, 1980) (ruling that the classification of the IRAs governed by section 408 of the Internal Revenue Code as community property depended on the laws of the state where the couple was domiciled); *see also* J. Thomas Oldham, Conflict of Laws and Marital Property Rights, 39 Baylor L. Rev. 1255, 1274 (1987) (explaining that the majority rule is that rights in personalty are determined by the law of the state where the couple was domiciled). Under Texas law, retirement benefits accrued during marriage are presumptively community property, but those accrued before marriage are not. *Howard v. Howard*, 490 S.W.3d 179, 184 (Tex. App.—Houston [1st Dist.] 2016, pet. denied), reh'g overruled (June 2, 2016); Tex. Fam. Code Ann. § 3.002 (West) ("Community property consists of the property, other than separate property, acquired by either spouse during marriage."); *see also Freeman v. Freeman*, 387 S.W.3d 772, 774 (Tex. App.—El Paso 2012, no pet.)(noting that military retirement benefits earned during the marriage are considered community property). The presumption of community property can only be overcome by clear and convincing evidence  Tex. Fam. Code Ann. § 3.003 (West).

The court agrees with the government that Mrs. Berry did not waive her interest in the retirement accounts. *See* Dkt. 108-1. Mrs. Berry waived her right to the qualified joint-and-survivor annuity due to the fact Mr. Berry chose a lump sum as a payment instead of the fifty percent joint-and-survivor annuity with the spouse as the coannuitant. *Id.* Accordingly, the alleged "waiver" did not waive Mrs. Berry's community property interest in the disputed accounts. Mrs. Berry has a one-half interest in Mr. Berry's retirement accounts, his sole managed community property. *See United States v. Loftis*, 607 F.3d 173, 176 (5th Cir. 2010) (describing retirement accounts as solely managed community property); *see also* Tex. Fam. Code Ann. § 3.102(a) (West) (defining sole management

community property as property that the "spouse would have owned if single, including: (1) personal earnings; (2) revenue from separate property; (3) recoveries for personal injuries; and (4) the increase and mutations of, and the revenue from, all property subject to the spouse's sole management, control, and disposition.").

Accordingly, retirement accounts are community property.[5] Restitution liens can attach to the following community property in Texas: (1) "all of the debtor's solely managed community property"; (2) "all of the couple's jointly managed community property"; and (3) "the debtor's one-half interest in [her] non-debtor spouse's solely managed community property, including [his] income." *United States v. Elashi*, 789 F.3d 547, 551 (5th Cir. 2015); *see also Loftis*, 607 F.3d at 178–79 n. 7 (holding that the government was entitled to garnish the debtor's one half interest in any community property solely managed by the non-debtor, including retirement accounts). Because Mrs. Berry, the debtor, has a one-half interest in her husband's solely managed community property, the government can seek to garnish that one-half interest in the accounts.[6] It is irrelevant that Mr. Berry is not the judgment debtor.

C.  **Consumer Credit Protection Act argument**

Third, the Berrys argue that even if the government is able to garnish Mr. Berry's retirement accounts, the government cannot garnish more than twenty-five percent of Mrs. Berry's interest under § 303 of the Consumer Credit Protection Act ("CCPA"). Dkts. 116 at 4, 125 at 17–18. The CCPA limits the maximum garnishment to twenty-five percent of "earnings for that week." 15

---

[5]The Berrys do not seem to make any specific arguments related to Mr. Berry's Brokerage Account ending in #1212. Investment accounts are presumptively community property unless a party can prove by clear and convincing evidence that the accounts are separate property. Tex. Fam. Code Ann. § 3.003(West). Mr. Berry did not provide such evidence.

[6]The government cannot seek to garnish Mr. Berry's one-half interest in the retirement accounts or the portion of the retirement accounts that are his separate property because they were accrued before marriage.

6

U.S.C. § 1673. The CCPA defines "earnings" as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program." 15 U.S.C. § 1672(a).

"The Supreme Court has cautioned that the terms 'earnings' and 'disposable earnings' under the CCPA are 'limited to 'periodic payments of compensation and (do) not pertain to every asset that is traceable in some way to such compensation.'" *United States v. Decay*, 620 F.3d 534, 543 (quoting *Kokoszka v. Belford*, 417 U.S. 642, 651, 94 S.Ct. 2431, 41 L.Ed 2d 374 (1974)). Whether the government is limited to twenty-five percent of the earnings in the retirement account depends on whether Mr. Berry is receiving periodic payments or he has the ability to cash-out. *Id.* at 544–45 ("The fact that [the restitution debtor] possessed the option to either cash-out his retirement account or wait and receive future monthly benefits allows the United States to seek an order compelling [a cash-out of his] benefits."). When Mr. Berry created the rollover IRA, he chose that the entire benefit be paid in one lump sum. Dkt. 108-1. As such, while Mr. Berry is required to take an annual minimum distribution each year because of tax laws, he also has the uninhibited ability to withdraw all of the money in one lump sum. *Colvin v. Alta Mesa Res., Inc.*, 920 S.W.2d 688, 690 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (The beneficiary of an IRA "has an unlimited capacity to reach the funds."); *see also* Dkt. 118. Accordingly, the twenty-five percent limit under the CCPA does not apply to the retirement accounts at issue

**D.     Facial invalidity argument**

The Berrys argue that the writ of garnishment overstates the amount due because it includes a future debt to the IRS which is currently not due. Dkts. 116, 129 at 5–6. The restitution owed to the IRS is still part of the restitution judgment owed by Mrs. Berry and does not invalidate the writ of garnishment. The MVRA allows the government to enforce a restitution order in the same manner as a civil judgment and enforce restitution orders "aggressively." *See United States v.*

*Ekong*, 518 F.3d 285, 286 (5th Cir. 2007) (holding that under the Mandatory Victim Restitution Act ("MVRA"), the government was entitled to seek immediate payment of the restitution judgment even though the criminal judgment specified that restitution was to be paid in installments). Accordingly, the Berrys' objection that the writ of garnishment is facially defective is denied.

**E.     Equitable argument**

Alternatively, the Berrys request relief pursuant to 18 U.S.C. § 3664 to modify the writ of garnishment to reduce the financial strain on Mr. Berry. Dkt. 125 at 20–21. To the extent the Berrys are making an equitable argument to modify the writ of garnishment, the court denies that request. The writ of garnishment is only seeking Mrs. Berry's community property interest in the disputed accounts and the court finds there is no hardship that would require a modification of the writ.

In conclusion, the retirement accounts in dispute are Mr. Berry's sole managed community property. Under Texas law, the government may garnish the judgment debtor's one-half interest in the sole managed community property of the non-debtor. Therefore, the government may garnish Mrs. Berry's one-half interest in Mr. Berry's retirement accounts.

### III. CONCLUSION

The Berrys' motions to quash or modify the writ of garnishment against Mr. Berry's retirements accounts ending in #1212 and #0513 are DENIED.

Signed at Houston, Texas on December 17, 2018.

_____
Gray H. Miller
United States District Judge